IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID NUNLEY, | ) |
| Plaintiff, | ) CASE NO. 5:21-CV-01134 |
| v. | ) **NOTICE OF REMOVAL** |
| ARGOS HEALTH, INC., ET AL., | ) |
| Defendants. | ) |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Argos Health, Inc. ("Argos" or the "Company") and David Rothgerber ("Mr. Rothgerber") (Argos and Mr. Rothgerber are collectively referred to as "Defendants") hereby file their Notice of Removal to this Court of an action pending against them in the Summit County Court of Common Pleas. Removal is based on the following grounds:

1. On or around April 29, 2021, Plaintiff David Nunley ("Plaintiff") filed a lawsuit against Defendants in the Summit County Court of Common Pleas entitled *David Nunley v. Argos Health, Inc.*, et al., Case No. CV 2021-04-1377 (the "State Court Action"). Plaintiff's Complaint asserts claims of race and sex discrimination, retaliation, aiding and abetting, and negligent training, retention, and supervision. Copies of the Complaint and Summons are attached as Exhibit A.

2. On or after May 5, 2021, Defendant Argos was served with a copy of the Complaint and Summons. *See* Exhibit A.

3. On or after May 5, 2021, Mr. Rothgerber was served with a copy of the Complaint and Summons. *See* Exhibit A.

4. Removal of this action is timely as Defendants filed this Notice of Removal within thirty (30) days of their receipt of the Summons and notice of the State Court Action. *See* 28 U.S.C. § 1446.

## I. Basis for Removal: Diversity Jurisdiction

5. A case may be removed from state to federal court if the case could have originally been brought in the federal forum. *See* 28 U.S.C. § 1441(a)(5). This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, diversity of citizenship, and, therefore, may be removed to this Court under 28 U.S.C. § 1441(a)-(b).

6. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332, which requires that: (1) the parties on each side of the case are citizens of different states; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

## II. The Citizenship of the Parties is Diverse

7. Upon information and belief, and according to Argos's business records and documents submitted by Plaintiff to Argos in connection with Plaintiff's employment, Plaintiff is a citizen of the State of Ohio.

8. For purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

9. Defendant Argos is a corporation organized under the laws of the State of Delaware, and its principal place of business is located in Dallas, Texas.

10. With the exception of the additional named Defendant, David Rothgerber, there is complete diversity among the parties.

11. The citizenship of Mr. Rothgerber should be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1441 because the Complaint presents no colorable claim against Mr. Rothgerber, and Plaintiff fraudulently joined Mr. Rothgerber as a Defendant in an apparent effort to defeat the jurisdiction of this Court. The Supreme Court has held that a plaintiff cannot defeat a defendant's right of removal on the basis of diversity of citizenship by the fraudulent joinder of a non-diverse defendant against whom the plaintiff has no reasonable cause of action. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921) (citation omitted); *see also Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

12. In order to determine whether a non-diverse defendant was fraudulently joined, the Sixth Circuit considers whether the plaintiff has a colorable basis for her/his claim against that defendant. *Alexander*, 13 F. 3d at 949. A review of the Complaint reveals that Plaintiff has no colorable basis for his Ohio Revised Code chapter 4112 claims for race and sex discrimination, retaliation, and aiding and abetting against Mr. Rothgerber.[1]

13. As an initial matter, Plaintiff filed his Complaint on April 29, 2021. Effective April 15, 2021, Ohio House Bill 352 revised Ohio Revised Code chapter 4112 to eliminate individual liability for supervisors and managers relating to employment discrimination claims under state law. *See* R.C. §§ 4112.01(A)(2), 4112.02(A), and 4112.08(A) ("no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in division (A)(24)(a) of section 4112.01 of the Revised Code against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer"). It is undisputed that Mr. Rothgerber did not personally employ Plaintiff –

---

[1] Upon Removal of the State Court Action, Defendants plan to file a Motion to Dismiss Mr. Rothgerber as a party to this action.

rather, Argos employed Plaintiff. Accordingly, there is no colorable basis for his race and sex discrimination claims against Mr. Rothgerber. *See id.*

14. Nowhere in the Complaint does Plaintiff assert he complained to Mr. Rothgerber of alleged discrimination or that Mr. Rothgerber was otherwise made aware of any alleged protected activity. Accordingly, there is no colorable basis for his retaliation claim against Mr. Rothgerber.

15. Lastly, Plaintiff asserts Mr. Rothgerber aided and abetted in discriminating against him. (Compl., ¶¶ 56-57.) "Ohio's courts generally construe aiding and abetting as an intentional act: '[O]ne is not an aider and abetter unless he knowingly does something which he ought not to do . . . which assists or tends in some way to affect the doing of the thing which the law forbids.'" *Luke v. City of Cleveland*, N.D. Ohio No. 1:02CV1225, 2005 WL 2245187, *8 (Aug. 22, 2005) (citations omitted). Although there are vague and conclusory allegations directed at Mr. Rothgerber (*e.g.* "David Rothgerber… continued to target Plaintiff because of his race," Compl., ¶ 15), and allegations concerning a couple of Mr. Rothgerber's workplace interactions with Plaintiff, the allegations contained in the Complaint do not state a colorable basis for Plaintiff's aiding and abetting claim. *See, e.g., Caiazza v. Mercy Med. Ctr.*, 5 Dist. No. 2013CA00181, 2014-Ohio-2290, ¶ 28 (complaint failed to state an aiding and abetting claim against individual defendants who were involved in discussions regarding complained of termination decision, agreed with the termination decision, but did not make the termination decision). Plaintiff does not allege that Mr. Rothgerber made discriminatory remarks or demonstrated discriminatory animus, or otherwise knowingly did something he should not have done to aid or assist in discrimination against Plaintiff.

4

16. Because there are no colorable claims against Mr. Rothgerber, his citizenship should be disregarded for purposes of determining jurisdiction under 28 U.S.C. § 1441 and his presence in this lawsuit cannot prevent removal.

17. Because Plaintiff is a citizen of the State of Ohio and Argos is a citizen of the States of Delaware and Texas, complete diversity exists between the relevant parties.

18. Defendants are represented by the undersigned counsel in this matter and each Defendant joins in and consents to removal of this action.

### III.  The Amount In Controversy Exceeds $75,000

19. The standard for determining whether a plaintiff's claim meets the amount in controversy is whether the district court finds, by a preponderance of the evidence, that the amount in controversy is greater than $75,000. 28 U.S.C. § 1446(c)(2)(B). A defendant seeking removal need only show that, assuming the plaintiff proves his or her claims, the amount in controversy "more likely than not" exceeds $75,000. *See, e.g., Everett v. Verizon Wireless*, 460 F.3d 818, 822 (6th Cir. 2006) (internal quotation omitted).

12. Courts may consider actual/compensatory damages, punitive damages, and, in some cases, attorney's fees to determine whether the amount in controversy exceeds $75,000. *See, e.g., Klepper v. First Am. Bank*, 916 F.2d 337, 340-41 (6th Cir. 1990).

13. Although Plaintiff's Complaint does not specifically allege the total damages sought, Plaintiff's Complaint prays for monetary damages including his lost wages, reinstatement or front pay, lost fringe benefits, statutory damages, emotional distress, and any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, interest on unpaid wages pursuant to Ohio Revised Code § 4113.15, attorney's


fees and costs, and all other relief in which Plaintiff is entitled. (*See*, Compl., at WHEREFORE clause.)

14. Although Defendants oppose Plaintiff's stated damages, aggregating the damages alleged ensures that the amount in controversy more likely than not exceeds $75,000 as set forth below.

      1. **Lost Wages**

15. Plaintiff's claim for lost wages presumably contemplates loss of earnings, front pay, and back pay. Argos's records indicate that while Plaintiff was employed with Argos, he earned $19.00 per hour. (Declaration of Paige Allen, ¶ 4b, attached as Exhibit B.) During his employment with Argos, from September 16, 2019 through February 24, 2020, Plaintiff's average weekly earnings were $816.22 (*i.e.* $18,773.13/23 weeks). (*Id.*)

16. Plaintiff's employment with Argos ended on February 24, 2020. (*Id.* at ¶ 4c.) Between February 24, 2020 and June 4, 2021 (the date of this filing), there have been more than 66 weeks of possible work had Plaintiff not concluded his employment with Argos. Based on Plaintiff's previous average weekly earnings, had he remained employed by Argos for the above-mentioned time period and continued to work the same amount as he previously had, he would have earned at least $53,870.52 ($816.22 per week x 66 weeks = $53,870.52).

17. The median time from filing to trial in the Northern District of Ohio is 14.1 months. U.S N. DIST. CT. -- ANNUAL ASSESSMENT 2018, May 14, 2018, https://www.ohnd.uscourts.gov/sites/ohnd/files/Annual%20Assessment%202018.pdf.[2] Assuming

---

[2] Given the continued delays to the judicial system caused by the COVID-19 global pandemic, the amount of time from filing to trial in this case will likely be longer than the 14.1 month average cited as of May 14, 2018.

this case goes to trial in approximately 61.3 weeks,[3] Plaintiff's back pay claim will seek at least 125 weeks of past wages and benefits. Thus, by the time of trial in this case, the lost wages alleged alone mean that Plaintiff will seek at least $102,027.50 ($816.22 per week x 125 weeks = $102.027.50).

18. Several courts have found the amount-in-controversy is satisfied in employment lawsuits with lesser-known damages at the time of removal. In *Mitchell v. White Castle Systems, Inc.*, No. 94-1193, 1996 WL 279863 (6th Cir. May 24, 1996), for example, the court found that the employer met its burden of showing the potential value of the claim, including lost wages and benefits, damages for emotional distress, punitive damages and damages to reputation, would likely exceed the amount in controversy, even though the plaintiff requested less than the jurisdictional amount.

### 2. **Emotional Distress**

19. Plaintiff also claims that he suffered "emotional distress." (Complaint, at prayer for relief.) The amount of alleged general damages, which include emotional distress, are not specified in the Complaint. However, they are properly considered in calculating the amount in controversy. *See Blocker v. PPG Indus.*, No. 3:17-cv-29-DJH, 2017 WL 3431136, at *3 (W.D. Ky. Aug. 9, 2017).

20. To establish the amount of emotional distress damages in controversy, a defendant may introduce evidence of jury verdicts in other cases. *Cain v. Hartford Life and Acc. Ins. Co.*, 890 F. Supp. 2d 1250 (C.D. Cal 2012). Indeed as *Simmons v. PCR Technology* noted, "emotional distress damages in a successful employment discrimination case may be

---

[3] The number of weeks was calculated by multiplying 14.1 months by 4.345 as there is an average of 4.345 weeks in a month.

7

substantial." 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002). Notably, other juries have provided substantial emotional distress awards in employment cases alleging similar claims. *See, e.g.:*

- *Moorer v. Baptist Mem. Health Care Sys.*, 398 F.3d 469 (6th Cir. 2005) (affirming $250,000 emotional distress award to plaintiff when employer discharged him due to a perceived disability).

- *Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir. 1992) (affirming award of $350,000 for emotional damages from defendant-employer's age discrimination and retaliatory discharge).

- *Fisher v. UPS*, 390 Fed. Appx. 465, 471-73 (6th Cir. 2010) (affirming a $300,000 emotional distress damages award after plaintiff was terminated and could not find work for one year after termination).

21. These high emotional distress awards illustrate how the amount in controversy in this case likely exceeds well over $75,000 based on Plaintiff's request for general damages alone.

      **3.** **Attorneys' Fees**

22. Plaintiff also seeks attorney's fees. (Complaint, at prayer for relief.) Requests for attorney's fees must be taken into account in ascertaining the amount in controversy. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) (affirming the "general principle of considering statutorily authorized attorneys' fees for purposes of establishing jurisdiction"). *See Johnson v. City of Clarksville*, 256 Fed. Appx. 782 (6th Cir. 2007) (holding that awarding legal fees of $250.00 per hour was reasonable because it did not depart from the prevailing market rate for legal services).

24. Defendants anticipate that the parties will likely propound written discovery and that depositions will be taken in this case, and that ultimately Defendants will file a Motion for Summary Judgment. Preparing for and responding to these actions alone are likely to trigger significant attorney's fees.

25. Therefore, if Plaintiff is successful in his claims, he could be entitled to an award of attorney's fees that itself would "more likely than not" exceed $75,000, as is typical in employment discrimination cases.

24. Without making any admission as to the merits or lack thereof of Plaintiff's claimed damages, based on the prayer for relief contained in Plaintiff's Complaint, Defendants believe in good faith that Plaintiff's alleged damages exceed the jurisdictional amount of $75,000 set forth in 28 U.S.C. § 1332(a). Plaintiff's Complaint, therefore, seeks more than $75,000 in damages from Defendants, which satisfies the amount in controversy under 28 U.S.C. § 1332(a).

25. Accordingly, this Court has diversity jurisdiction because the relevant parties are citizens of different states and the amount in controversy exceeds $75,000.

**IV.    Venue and Notice**

26. Venue is proper in this district and in this division pursuant to 28 U.S.C. § 1391.

27. This action is not a non-removable action as described in 28 U.S.C. § 1445.

28. Promptly after the filing of this Notice of Removal, Defendants will serve written notice of this removal on all parties and file a copy of this Notice of Removal with the Clerk of the Court of the Summit County Court of Common Pleas. A copy of the Notice of Filing Notice of Removal is attached as Exhibit C.

WHEREFORE, Defendants respectfully file this Notice of Removal, removing this case from the Summit County Court of Common Pleas to the United States District Court for the Northern District of Ohio, Eastern Division.

Respectfully submitted,

*/s/ Amanda T. Quan*
Amanda T. Quan (0086623)
Alexandria A. Gardella (0100000)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
 Ph: 216-241-6100
 Fax: 216-357-4733
 Email: amanda.quan@ogletree.com
alexandria.gardella@ogletree.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the Court's Electronic Filing System. Notice of this filing will be sent to all parties by operation of the Court's System, including the following:

Stephan I. Voudris
Christopher M. Sams
Voudris Law LLC
8401 Chagrin Road, Suite 9
Chagrin Falls, Ohio 44023
svoudris@voudrislaw.com
csams@voudrislaw.com
*Counsel for Plaintiff David Nunley*

> */s/ Amanda T. Quan*
> *One of the Attorneys for Defendants*

47374283.1