IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID NUNLEY | ) | CASE NO. 5:21-CV-01134-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| ARGOS HEALTH, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMAND ENDORSED HEREON** |

**AMENDED COMPLAINT**

Plaintiff David Nunley ("Plaintiff") alleges as follows for his first Amended Complaint against Defendants Argos Health, Inc. ("Argos") and David Rothgerber ("Rothgerber") (collectively, "Defendants"):

1. Plaintiff is African American, male, and worked for Defendants in Summit County, Ohio as a Claims Resolution Specialist.

2. Defendants hired Plaintiff on about September 16, 2019.

3. Defendants terminated Plaintiff's employment on about February 24, 2020.

4. Plaintiff was qualified for his job.

5. Plaintiff was paid bonuses while working for Defendants.

6. Other African American employees of Defendant complained about race discrimination by Defendant, and these African American employees also had their employments terminated around the same time as Plaintiff.

7. The Summit County Court of Common Pleas has subject matter and personal jurisdiction over the claims raised in this Complaint.

8. Venue is proper in the Summit County Court of Common Pleas in Summit County, Ohio.

9. Plaintiff has suffered damages in excess of $25,000.

10. Plaintiff has hired the undersigned counsel and has agreed to pay them reasonable attorney's fees and costs if they are successful on one or more of the claims set forth herein.

11. Plaintiff was the only African American male employee in the office in which he worked for Defendants, and this office consisted of about thirty employees

12. Defendants treated Plaintiff differently than they treated Caucasian and female employees.

13. From the start of Plaintiff's employment, he endured discrimination based on his race, and Plaintiff complained that he was being targeted because of his race.

14. In October 2019, Plaintiff complained to Rothgerber directly about race discrimination from his first supervisor.

15. During his complaint of race discrimination in October 2019, Plaintiff told Rothgerber that he was considering resigning because he "could not deal with the very clear and blatant racial discrimination" at work.

16. Even after the termination of Plaintiff's first supervisor, the race discrimination continued from Defendants.

17. Rachelle Theiss, who replaced Plaintiff's original supervisor, and David Rothgerber, Argos's President, both targeted Plaintiff because of his race.

18. On or about February 11, 2020, during a meeting in Defendants' conference room, Plaintiff had his phone sitting (though untouched and unused) on the desk in front of him. Other (Caucasian and female) employees in the conference room during this meeting also had their

phones on the desk. After the meeting, Plaintiff's supervisor, Rachelle Theiss, instructed another supervisor to reprimand Plaintiff, and only Plaintiff, for having his phone on the desk.

19. The disparate treatment from Defendants towards Plaintiff and Caucasian and female employees was evident, for example, in its enforcement of certain rules, such as eating at desks and bringing (unopened) alcohol to work.

20. All of Defendants' employees ate food at their desks, but Defendants singled out Plaintiff for having food at his desk. During one instance, on about January 23, Rachelle Theiss walked past numerous Caucasian and female employees who were eating and their desks and reprimanded Plaintiff for this exact same behavior. During a separate incident, Rothgerber again reprimanded *only* Plaintiff for eating while other Caucasian and female employees were also eating. Numerous co-workers jumped to Plaintiff's defense and exclaimed that others were doing exactly the same thing that Plaintiff was doing. Despite this, Rothgerber again later reprimanded *only* Plaintiff during a meeting for eating food at his desk.

21. Defendants, including Rothgerber, also treated Plaintiff differently than Caucasian and female employees by disciplining him for taking early lunches and for having his phone on the desk at a meeting—actions that did not earn discipline for Caucasian or female employees. Defendants did not have rules or guidelines regarding when breaks or lunches could be taken. Indeed, Rothgerber explicitly said that he did not care about how Defendants' employees came about their hours, as long as they reached forty hours each week.

22. Plaintiff brought a six-pack of beer as a gift for another employee at the office. After he did this, Rothgerber disciplined Plaintiff for bringing in the alcohol. Caucasian employees regularly brought in alcohol as gifts for other employees, and they never received any discipline for such conduct. Indeed, on one occasion, a Caucasian employee brought in an open bottle of

3

wine and Rothgerber joked with this employee about her drinking on the job. She received no discipline for such conduct. Rothgerber himself also planned and executed a company-wide alcohol exchange during Christmas.

23. On about January 23, 2020, Plaintiff complained to Human Resources Director Paige Allen via phone call about the discrimination that he was experiencing. During that call, Plaintiff told Allen that "in a room full of Caucasians, the eyes of management falls exclusively on the only African American male in the building." Plaintiff further advised the HR Director that he believed he was being singled out because of his race, and he felt that additional discrimination training was needed within the management staff.

24. The next day, on about January 24, 2020, Nunley also complained to Roxanne Lucas, a supervisor who worked with Rothgerber, and expressed that he felt he was being targeted because of his race and that there was "clear discrimination."

25. During Plaintiff's January 24, 2020 complaint, he explained that he was "dealing with constant discrimination every single day."

26. In about February 2020, Plaintiff also emailed all of his supervisors, including Rothgerber directly, and complained that he was being targeted. In this email, Plaintiff complained that he thought there was a lot of "unconscious discrimination" against him.

27. About one month after Plaintiff complained about discrimination, Defendants terminated Plaintiff's employment. Rothgerber is the individual who terminated Plaintiff's employment.

28. During Rothgerber's termination meeting with Plaintiff, Rothgerber explicitly told Plaintiff that some of the supposed reasons for his termination included bringing alcohol into the

office and eating at his desk—actions which Caucasian female employees also took without discipline.

29. During the termination meeting with Rothgerber, Plaintiff told Rothgerber that the termination was "bogus" and that this was "the most racist and discriminatory company that [Plaintiff] had ever worked for." Plaintiff also told Rothgerber that he would be suing. Rothgerber told Plaintiff to "get the fuck out of [his] office."

30. Plaintiff has attempted to obtain all administrative remedies by filing a Charge of Discrimination that was dual filed with the Ohio Civil Rights Commission on or about March 4, 2020. Plaintiff received a right to sue letter dated February 26, 2021.

## COUNT I
## RACE DISCRIMINATION/HOSTILE WORK ENVIRONMENT

31. Plaintiff re-alleges each allegation set forth in paragraphs 1-30 above.

32. In violation of Ohio Revised Code Section 4112.02, Argos discriminated against Plaintiff because of his race by terminating Plaintiff's employment and subjecting him to a racially hostile work environment.

33. Plaintiff is a member of a protected class.

34. Plaintiff was qualified for the job that he held with Argos.

35. Plaintiff suffered an adverse employment action by being terminated from his employment with Argos and being subjected to a racially hostile work environment.

36. Argos created a racially hostile work environment by engaging in severe and pervasive conduct that altered the terms and conditions of Plaintiff's employment.

37. Plaintiff has been damaged by Argos's race discrimination and racially hostile work environment.

38. Argos's conduct is the proximate cause of Plaintiff's damages.

39. Argos acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT II
## SEX DISCRIMINATION

40. Plaintiff re-alleges each allegation set forth in paragraphs 1-39 above.

41. Plaintiff is male.

42. Argos terminated Plaintiff's employment.

43. Argos terminated Plaintiff's employment because of his sex.

44. In violation of Ohio Revised Code Section 4112.02, Argos discriminated against Plaintiff because of his sex by disciplining Plaintiff for things for which his female counterparts were not disciplined and by terminating his employment.

45. Plaintiff was qualified for his job with Argos.

46. Plaintiff suffered an adverse employment action by being terminated by Argos.

47. Argos replaced Plaintiff with a female employee.

48. Argos's conduct is the cause of Plaintiff's damages.

49. Argos acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT III
## RETALIATION

50. Plaintiff re-alleges each allegation set forth in paragraphs 1-49 above.

51. Plaintiff brings this action under Ohio Revised Code Sections 4112.02(I).

52. Plaintiff engaged in statutorily protected activity by opposing Defendants' unlawful employment practices.

53. Plaintiff had a reasonable, good faith belief that Defendants were engaging in unlawful employment practices.

54. Plaintiffs suffered an adverse employment action by Defendants terminating his employment.

55. The adverse employment action that Plaintiff suffered would be materially adverse to a reasonable employee and would persuade a reasonable worker not to make or support a charge of discrimination.

56. There is a causal link between Plaintiff's protected opposition and Defendants' failure to re-hire Plaintiffs.

57. Plaintiff has been damaged by Defendants' retaliation.

58. Defendants' conduct is the cause of Plaintiff's damages.

59. Defendants acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT IV
## AIDING AND ABETTING

60. Plaintiff re-alleges each allegation set forth in paragraphs 1-59 above.

61. Plaintiff brings this action under Ohio Revised Code Section 4112.02(J).

62. Rothgerber has aided in discriminating against Plaintiff.

63. Rothgerber has abetted in discriminating against Plaintiff.

64. Plaintiff has been damaged by Rothgerber's aiding or abetting.

65. Rothgerber's conduct is the cause of Plaintiff's damages.

66. Rothgerber acted with actual malice, entitling Plaintiff to punitive damages and his attorney's fees and costs.

## COUNT V
## NEGLIGENT TRAINING, RETENTION, AND SUPERVISION

67. Plaintiff re-alleges each allegation set forth in paragraphs 1-66 above.

68. Argos had a duty to use due care in training, retaining, and supervising Rothgerber and Theiss.

69. Argos breached its duty to use due care in training, retaining, and supervising Rothgerber and Theiss.

70. There was an employment relationship between Argos and Rothgerber and Theiss.

71. Rothgerber and Theiss violated Ohio Revised Code 4112.02(J) by aiding and abetting Argos in discriminating against Plaintiff.

72. Rothgerber and Theiss were not competent for the job that they held with Argos.

73. Argos knew or should have known that Rothgerber and Theiss were not competent for the job that they held with Argos.

74. Argos's failure to take action against Rothgerber and Theiss caused Plaintiff's injuries.

75. Argos's negligence in retaining and supervising Rothgerber and Theiss was the proximate cause of Plaintiff's injuries.

76. Rothgerber and Theiss's actions were foreseeable.

77. Argos's conduct is the cause of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment against Defendants for his lost wages, reinstatement or front pay, lost fringe benefits, statutory damages, emotional distress, and any other compensatory damages, punitive damages, prejudgment interest at the statutory rate, post-judgment interest, interest on unpaid wages pursuant to Ohio Revised Code 4113.15, attorney's fees and costs, and all other relief to which he is entitled.

JURY TRIAL DEMANDED.

    Respectfully submitted,

    /s/ Christopher M. Sams
    Stephan I. Voudris, Esq.
    Supreme Court No. 0055795
    Christopher M. Sams, Esq.
    Supreme Court No. 0093713
    Voudris Law LLC
    8401 Chagrin Road, Suite 8
    Chagrin Falls, OH 44023
    svoudris@voudrislaw.com
    csams@voudrislaw.com
    440-543-0670
    440-543-0721 (fax)
    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2021, I filed the foregoing through this Court's Electronic Filing System, which shall serve notice upon counsel for Defendants.

/s/ Christopher M. Sams